RICE (UNITED STATES v.). See Case No. 16,153.

RICE (WETMORE v.). See Case No. 17,468.

RICE, The WILLIAM D. See Case No. 17,-691.

RICH v. CAMPBELL. See Case No. 14,837.

RICH, The. See Case No. 18,221.

———

## Case No. 11,756.

### RICH et al. v. The CHERUB.

[Oliver's Forms (1842) 492.]

District Court, D. Massachusetts. Nov., 1823.

FISHING VOYAGES—SHIPPING PAPER — DIFFERENT
PAROL AGREEMENT—USAGE.

[1. The contract expressed in shipping paper signed at the commencement of a fishing voyage must control, as against any parol agreement or understanding at variance therewith, and which constitutes a departure from the laws of the United States.]

[2. The usage prevailing at Marblehead, of giving the master only an equal share with the members of the crew in the part assigned to the crew, must prevail, where the vessel is owned at Marblehead, and the voyage is made from there, although an additional one sixty-fourth is allowed the master for his privilege by the custom of Cape Cod and the South Shore.]

In admiralty.

Abraham Moore and D. A. Simmons, for libellants.

DAVIS, District Judge. The libellants, Matthias Rich, Nicholas White, and John Philan, prosecute this suit for the recovery of their shares in a fishing voyage, performed by them and eight others, in the schooner Cherub, in the summer of 1822. Henry N. Quiner, of Marblehead, was owner of the vessel. Matthias Rich was skipper. A shipping paper, in common form for such a voyage, was signed by the libellants, and seven others of the crew. The vessel proceeded to the Labrador shore, was employed five months in the fishing business, and returned to Marblehead with about eight hundred quintals of fish, which were delivered to Mr. Quiner, the owner; and what further curing was necessary was performed by him on his fishing flakes. The other man, William Kirby, was taken up on the voyage, whose name does not appear in the shipping papers. He engaged for wages, which were paid by the libellants.

The libel alleges an understanding and agreement between the fishermen, different from the terms of the shipping paper. It is contended, that only six of the signers, including the skipper, Captain Rich, were the real sharesmen, and that all the rest went on wages; and if these men are considered as sharers, it is alleged that they have been paid their stipulated wages, by Captain Rich, from the proceeds of oil taken on the voyage, and from his other funds; and that he ought, therefore, to represent them, and to be credited, in adjustment of the voyage, with their respective shares. There is evidence that the voyage did proceed with the understanding stated in the amendment to the libel; but its variance from the written agreement, and its departure from the law of the United States on the subject, compel me to disregard it, and to require the voyage to be made up according to the terms of the shipping paper. The second direction to the auditor was on this ground. His report and the counter statement, presented by the respondent, enable me to make up the voyage so as to determine the vessel's share, and the shares of the crew. In the account of great generals, the two statements agree, excepting that the owner's statement includes wood, omitted in the auditor's account, and places half the candles to the small generals. In these particulars I adopt the owner's account. The owner charges $24.53 for flake hire. The three-eighths given to the owner of the vessel, by the shipping paper, is for the shoresman's compensation, as well as the use of the vessel. The shoresman's share is considered as one-eighth, and the vessel's one-quarter. There are some differences, 1 find, between the North Shore and South Shore fishermen in respect to some particulars; but in this they agree. There is evidence, indeed, that a charge for flake hire is frequently made and admitted at Marblehead; but it is doubtful whether it could be sustained by the shipping papers. It is not necessary, however, to decide whether it be admissible by the shipping paper in this particular case. 1 should be disposed to give the shipping paper a very liberal construction in reference to these voyages, so as to include and sanction any well-established and approved usages in this branch of business, though not expressly noticed in the written contract. In regard, however, to the other charge in this case, it does not appear to be reasonable, as the fish were principally cured before they were delivered to the owners; and in what was done at Marblehead the crew assisted, whose charge for that service 1 disallow, as I do the owner's charge for flake hire. I add to the great generals the amount of wages paid to Kirby, whose name is not on the shipping paper, considering him to have been engaged for the benefit of the whole concern. The amount of great generals will thus be $1,132.54, which, being deducted from the fish and oil taken, $2,563.45, leaves the net proceeds $1,430.91.

| | |
|---|---|
| Three-eighths belonging to the vessel | $ 536 59 |
| The remaining five-eighths to the crew ......................... | 894 32 |
| | $1,430 91 |

In regard to the amount of small generals, there is no dispute; which amount, $486.16, being deducted from the five-eighths belonging to the owner, leaves $408.17 to be divided among them. The master claims one sixty-fourth for his privilege. If this is to be allowed, it must, according to the terms of the shipping paper, come out of the five-eighths appertaining to the crew, for it is expressly agreed that the vessel's share shall be three-eighths. This allowance is usually, and, 1 believe, invariably, made on the South Shore, but it is testified not to be the practice at Marblehead, and the usage at Cape Ann corresponds, in this particular, with that at Marblehead. The skipper has an equal share with his companions, and no more, unless it be otherwise specially agreed; and from Roundy's deposition it would appear that there was no contract or understanding in this voyage, in this particular, varying from the common usage at Marblehead. It was natural for Captain Rich, coming from Cape Cod, to expect this allowance; but the voyage, in this respect, must be governed by the usage at Marblehead. The whole crew, including the skipper, being thus equal sharers, their respective share, one-tenth each of $408.17, is $40.81. The libellants, therefore, are to be respectively credited with this sum, and charged with what they may have received; and the decree will be accordingly as the balance may appear. There is not sufficient evidence of transfer, to authorize an admission of Captain Rich to represent the other shares which he claims, besides his own. But I consider those shares in the hands of the respondents, as answerable for advances made to these men, respectively, either by Captain Rich, or by the respondents, and shall decree to Captain Rich his portion of such advances, upon accounts to be separately stated with each of the men. The materials before me do not enable me to make up this part of the account. It may be done by the parties, and if they do not agree, after this indication of the principles of the case, I will examine their further statements, in this particular, and settle the precise sums, if any, which the libellants are entitled to recover. It may be that the advances made by Captain Rich and by the respondents to the hired men, as they are called, may exceed the amount of their shares. In such case, the loss by such excess should, I think, be sustained, three-eighths by the owner, and five-eighths by the six persons who considered themselves as sharers. For though I cannot make up the voyage generally, on their understanding or agreement as to its plan, but must be governed by the ship-

ping paper, yet, in regard to the loss, if any there be, resulting from the course they have pursued, it should be borne in the same proportion as they would have shared in the voyage, if their agreement should have been carried into execution. On this principle, should there be any excess of payment to a hired man beyond his share. Captain Rich will be charged with one-quarter of five-eighths, or five forty-eighths, of such excess.

This cause has received minute and thorough attention from the counsel on both sides. It has presented difficulties which must ever occur when the actual procedure and understanding of the parties is different from the contract which they have signed, and by which the court must be governed. It is important, in this branch of business, to look carefully at the requirements of the law of the United States. Its strict observance may be, at times, inconvenient, but the court cannot sanction a departure from its requirements. It may be well, also, to amend the shipping paper, in a particular not militating with the statute, but which, as it stands in the printed form before me, may not admit of some allowances, which may be according to usage, but may not be comprehended under the expressions employed. The skipper and fishermen, by the form, are entitled to five-eighths of the fish and five-eighths of the bounty, after deducting the general and other supplies, according to the usage and custom of Marblehead. If any deduction be intended or expected, not embraced by the term "supplies," it should be inserted, that there may be no vexatious and expensive dispute in this interesting branch of business, which requires prompt and speedy adjustment, and can illy sustain the expense and delay of litigation.